EMILIO M. GARZA, Circuit Judge,
dissenting:
The issue before us is whether the district court abused its discretion in failing to submit Smithers’ proposed instruction.[1] Both the proposed instruction and the instruction which was given[2] state that at some point an *148 escape ends.[3] Thus, the issue is not the continuity of the escape,[4] but the more troublesome question — at what point does an es.cape end. The majority opinion concludes that the tension between 18 U.S.C. § 752(a) (assisting an escape) and 18 U.S.C. § 1072 (harboring or concealing a fugitive) requires an additional instruction to the jury — that an escape ends when the escapee reaches “temporary safety” that is,[5] at the completion of “immediate active pursuit.”[6] I disagree.
“Smithers argues that the trial court erred by not instructing that the crime of aiding an escape ends once immediate active pursuit of the escapee ends,_” Maj. op. at 144. Thus, “[h]e contends that the jury could have based his conviction on events [which occurred in late October and November 1992][7] after his brother eluded pursuit in Texas.” Id. at 144. In his brief, Smithers states:
During closing argument, Dillard Jack Smithers’ counsel conceded that his client sent Jimmy and Libby Smithers money, and failed to disclose their location to law enforcement. The trial court instructed the jurors that these acts, standing alone, could not constitute harboring and concealing an escapee. However, in order that the jury not erroneously conclude that these acts constitute aiding the escape, Dillard Jack Smithers requested that the trial court instruct the jurors that the crime of aiding an escape terminates once the escapee has reached a point of temporary safety.[8]
Appellant’s Brief at 8 (citations omitted). Accordingly, the operative instruction which we must examine is not the instruction on the third object of the conspiracy — harboring and concealing “after his escape” — but rather, the second object — assisting “in the escape.” [9] See supra note 2.
*149 Important to this analysis is that the district court correctly instructed the jury on the charges contained in Counts 1 (second object of the conspiracy) and 3 of the indictment and limited the jury’s considerations to events occurring “in or about August 1992 and continuing through at least on or about[10] August 26, 1992”, the date of Jimmy’s escape.[11] See id. Moreover, all of the parties understood the court’s instruction to limit the evidence to events on or before August 26 and argued that understanding to the jury.[12]
Secondly, the trial court instructed the jury that it must find, beyond a reasonable doubt, “that defendant Dillard Jack Smith-ers, Jr. instigated, aided or assisted in the escape of Jimmy Arnold Smithers.” See id. Thus, to the extent that Smithers contends “[t]he jury may nevertheless have concluded that there was sufficient evidence that he conspired to aid the escape by improperly considering evidence of assistance rendered after the escapee reached a point of temporary safety,” Appellant’s Brief at 14, the trial court correctly limited the jury’s consideration to those events surrounding Jimmy’s escape on or about August 26.[13]
Moreover, Smithers concedes “[arguing] in his closing statement that the jury should only find that he aided the escape if he rendered assistance to the escapee prior to the escape,” although he maintains that “without the requested instruction the jury was free to disregard [this argument].” Appellant’s Reply Brief at 4 (citation omitted). Given the instruction which the trial court gave on assisting the escape, the jury was not free “to disregard” Smithers’ argument.
I also disagree that Smithers’ proposed instruction, see supra note 1, is a correct statement of the law. This added definition has no statutory or legislative history support and very little common law support.[14] Had Congress desired to define that exact point when an escape ends, it clearly knew *150 how to do so: The majority demands more precision than the applicable statute requires. Furthermore, the language of the proposed instruction is, at best, confusing. See supra note 5. Accordingly, the district court did not abuse its discretion by not submitting Smithers’ proposed instruction.[15]
Respectfully, I dissent.

. Smithers requested the following jury instruction:
The crime of aiding an escape terminates once the escapee has reached temporary safety. When physical control over the escapee has ended by flight beyond immediate active pursuit, the escape is complete. After that point in time, aid to the fugitive is no longer aiding the escape, although it may be evidence of harboring and concealing.

. The trial court submitted in pertinent part the following jury instructions:
To assist you in determining whether there was a conspiracy to (1) effect the escape of Jimmy Arnold Smithers from the Federal Correctional Institution at Seagoville, Texas; (2) instigate, aid, and assist, and attempt to instigate, aid, and assist, and attempt to instigate, aid and assist, the escape of Jimmy Arnold Smithers; and (3) willfully harbor and conceal prisoner Jimmy Arnold Smithers after his escape from the custody of a federal correctional institution, I will now explain to you the elements of these object offenses.... The second object of the conspiracy charged in count 1 is instigating, aiding, and assisting escape, or attempting to do so. The elements of this crime are set out in instructions in count 3 below.... The third object of the conspiracy charged in count 1 is willfully harboring and concealing. The elements of this crime are:
First: That one or more persons harbored and concealed Jimmy Arnold Smithers after his escape from the custody of the Federal Correctional Institution at Seagoville, Texas, as charged in the indictment; and
Second: That Jimmy Arnold Smithers was in federal custody and departed from the Federal Correctional Institution at Seagoville, Texas without permission.
The term "harbor” commonly means to give refuge to, shelter, lodge, care for, or protect. The term “conceal" commonly means to hide; secrete; or keep out of sight, discovery, or knowledge. The term "custody” means the detention of an individual by virtue of lawful process or authority.
Under these definitions, to "harbor” or "conceal” requires some affirmative act of providing aid to a prisoner to avoid detection or apprehension. Thus, failure to disclose a prisoner's location or giving financial assistance to an escaped prisoner could not, standing alone, constitute harboring or concealing.

The Charge in Count 3 of the Indictment

(Instigating, Aiding and Assisting Escape)
Count 3 of the indictment charges that in or about August 1992 and continuing through at least on or about August 26, 1992, in the Dallas Division of the Northern District of Texas and elsewhere, defendants Lizbeth Shull Smithers and Dillard Jack Smithers, Jr., aided and abetted by each other and by others, knowingly and willfully aided and assisted in the escape of Jimmy Arnold Smithers from Seagoville Federal Correctional Institution, Seagoville, Texas, after he had been committed to the custody of that institution by direction of the Attorney General, in violation of Title 18, United States Code, Sections 752(a) and 2. Title 18, United States Code, Section 752(a) provides in pertinent part:
Whoever ... instigates, aids or assists the escape ... of any person ... committed to the custody of the Attorney General or to any institution or facility by his direction, shall, if the custody or confinement is by virtue of ... [a] conviction of any offense, be [guilty of an offense against the United States],
Thus, § 752(a) makes it a crime for any person to instigate, aid or assist in the escape of any person who is in federal custody. For you to find defendant Dillard Jack Smithers, Jr. guilty of the crime of aiding and assisting an escape, you must be convinced that the government has proven each of the following four elements beyond a reasonable doubt:
First: that defendant Jimmy Arnold Smith-ers was in federal custody;
Second: that defendant Jimmy Arnold Smithers was in such custody at an institution or facility where he was confined by the direction of the Attorney General for conviction of an offense;
Third: that defendant Dillard Jack Smithers, Jr. instigated, aided or assisted in the escape of Jimmy Arnold Smithers; and
Fourth: that defendant Jimmy Arnold Smith-ers knew he did not have permission to leave federal custody.
The term “custody" means the detention of an individual by virtue of lawful process or authority.
Also, in your consideration of count 3, the defendant Dillard Jack Smithers, Jr. may be found guilty if you find beyond a reasonable doubt that he committed the offense himself or caused its commission through or with others (see instructions on aiding and abetting below) (emphasis added).

. The district court instructed the jury that in order to convict Jack Smithers of Count 1 (third object of the conspiracy, harboring and concealing) it had to find “[tjhat one or more persons harbored and concealed Jimmy Smithers after the escape....” See supra note 2; see also 18 U.S.C. § 1072 ("Whoever willfully harbors or conceals any prisoner after his escape from the custody of the Attorney General or from a Federal penal or correctional institution,....”) (emphasis added). In contrast, the district court instructed the jury that in order to convict Jack Smithers of Counts 1 (second object of the conspiracy, assisting an escape) and 3 (assisting an escape), it had to find, beyond a reasonable doubt, he "instigated, aided or assisted in the escape of Jimmy Arnold Smithers.” See supra note 2 (emphasis added).

. I agree with the majority, that from the prospective of one who assists or harbors an escapee, that "United States v. Bailey does not undermine” the distinction that harboring occurs "after the escape.” See maj. op. at 145; United States v. Bailey, 444 U.S. 394, 413, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980) ("[W]e think it clear beyond peradventure that escape from federal custody as defined in § 751(a) is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure.”); maj. op. at 145 ("In this practical sense the offense [under 18 U.S.C. § 751(a) (escape)] is said to be continuing.”).

. I question whether instructing a jury that "an escape terminates once the escapee has reached temporary safety” is factually equivalent to instructing it that the escape is complete "when physical control over the escapee has ended by flight beyond immediate active pursuit.” But see infra note 6. The former focuses on the escapee (reaching temporary safety); while the latter, on the pursuer (immediate active pursuit). The proposed instruction is confusing at best.

. See United States v. Vowiell, 869 F.2d 1264, 1268 (9th Cir.1989) (“The crime of aiding an escape terminates once the escapee has reached temporary safety: ‘When the physical control has ended by flight beyond immediate active pursuit the escape is complete. After that aid to the fugitive is no longer aiding his escape.'") (quoting Orth v. United States, 252 F. 566, 568 (4th Cir.1918) (citations omitted)). But see supra note 5 (Is reaching "temporary safety" factually equivalent to the completion of "immediate active pursuit"?).

. See Record on Appeal vol. 6, at 38-39, 120-21.

. Thus, Smithers concedes, to the extent there is any evidence of harboring and concealing an escapee, the trial court’s instruction to the jury— that "failure to disclose a prisoner's location or giving financial assistance to an escaped prisoner could not, standing alone, constitute harboring or concealing” — correctly limited the jury’s consideration on that object of the conspiracy. See supra note 2.

. Furthermore, since the first object of the conspiracy — escape—was directed at the acts of Jimmy Smithers, see Record on Appeal Vol. 2, at 379-80, the only object of the conspiracy on which Jack Smithers could have been convicted, given his concession on harboring and concealing, is the second object — assisting Jimmy's escape.

. The district court further instructed the jury:
You will note that the indictment charges that the offenses were committed ‘on or about’ certain dates. The proof need not establish with certainty the exact date of an alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the date alleged.
See id. at 371.

. I disagree with the majority's view that events occurring in late October and November 1992 are reasonably near "at least on or about August 26, 1992”. See also infra note 12 and accompanying text.

. See Record on Appeal vol. 8, at 49 (Smithers' attorney stated in closing argument: "Assisting the escape means assisting the escape from the institution. Don't confuse that with harboring and concealing. The bottom line I submit is that you should only convict Smithers if you believe that he knew about it in advance, the escape in advance or assisted it in advance or according to an instruction you will find in the conspiracy charge if he joined a conspiracy with full knowledge of its scope and all of that was done in furtherance of the conspiracy.”); id. at 62-63 (Curry's attorney stated: "And everything but harboring and concealing was over after August 26 according to the government’s indictment. The escape was on the 26th. All over after the 26th except the harboring and concealing.”); id. at 71 (The prosecutor argued; "Been a lot of language about Jimmy Smithers leaving the federal penitentiary at Seagoville. He escaped. He escaped with the assistance of these two defendants. And the assistance pre-escape, here is some of the items_ The liquidation, the loading of the blue van, the visitation, the chicken scratch map, the blue van again because it mysteriously appears back at Papa Bear’s, the telephone calls, look at those telephone bills, at the patterns that they present to you.”).

. To the extent, however, that Smithers argues that evidence that he "sent Jimmy ... money, and failed to disclose [his] location" is irrelevant to the conspiracy or substantive count of assisting the escape, he is mistaken: This evidence is, at least, relevant to prove “motive, ... intent, plan, knowledge, ..., or absence of mistake or accident.” See Fed.R.Evid. 404(b).

. Orth cites "2 Wharton, Cr.L. 2606; 1 Russell on Crimes, 467; 10 R.C.L. 579; Smith v. State, 8 Ga.App. 297, 68 S.E. 1071; State v. Ritchie, 107 N.C. 857, 12 S.E. 251,” Orth, 252 F. at 568, while Vowiell cites, "Orth v. United States, 252 F. 566, 568 (4th Cir.1918); see Wharton’s Criminal Law and Procedure § 1370 (1957) (assistance after completion of escape makes one guilty as an accessory after the fact and not as a party to the offense of escape); 4 Wharton's Criminal Law §§ 664-665 (1981) (emphasizing departure, rather than absence, from legal custody as hallmark of escape and prison breach); see also United States v. Randolph, 261 F.2d 234, 237 (7th Cir.1958) (distinguishing aiding an escape from post-escape concealment under Illinois law).” Vowiell, 869 F.2d at 1268. None of the cited authority supports the conclusion that Congress intended to define "after the escape” in this manner.